NML CAPITAL, LTD., Plaintiff,

v.

The REPUBLIC OF ARGENTINA, Defendant.

NML Capital, Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

FFI Fund, Ltd. and FYI Ltd., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Perez, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Aurelius Capital Partners, LP, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Blue Angel Capital I LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

EM Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

Lightwater Corp. Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

Old Castle Holdings, Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

Settin, Plaintiff,

v.

The Republic of Argentina, Defendant.

Capital Ventures International, Plaintiff,

v.

The Republic of Argentina, Defendant.

Adami, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Capital Markets Financial Services Inc., et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Foglia, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Pons, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Guibelalde, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Dorra, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Beloqui, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Tortus Capital Master Fund, LP, Plaintiff,

v.

The Republic of Argentina, Defendant.

Tortus Capital Master Fund, LP, Plaintiff,

v.

The Republic of Argentina, Defendant.

Trinity Investments Limited, Plaintiff,

v.

The Republic of Argentina, Defendant.

Montreux Partners, L.P., Plaintiff,

v.

The Republic of Argentina, Defendant.

Los Angeles Capital, Plaintiff,

v.

The Republic of Argentina, Defendant.

Cordoba Capital, Plaintiff,

v.

The Republic of Argentina, Defendant.

Wilton Capital, Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

MCHA Holdings, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

MCHA Holdings, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

Andrarex Ltd., Plaintiff,

v.

The Republic of Argentina, Defendant.

Claridae, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Arag–A Limited, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Attestor Master Value Fund
LP, Plaintiff,

v.

The Republic of Argentina, Defendant.

Angulo, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Lambertini, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Honero Fund I, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

Trinity Investments Limited, Plaintiff,

v.

The Republic of Argentina, Defendant.

Banca Arner S.A., et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Trinity Investments Limited, Plaintiff,

v.

The Republic of Argentina, Defendant.

Trinity Investments Limited, Plaintiff,

v.

The Republic of Argentina, Defendant.

MCHA Holdings, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

MCHA Holdings, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

Ercolani, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Fazzolari, et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Stonehill Institutional Partners,
L.P. et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

White Hawthorne, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

VR Global Partners, LP, Plaintiff,

v.

The Republic of Argentina, Defendant.

Honero Fund I, LLC, Plaintiff,

v.

The Republic of Argentina, Defendant.

Procella Holdings, L.P., Plaintiff,

v.

The Republic of Argentina, Defendant.

Bybrook Capital Master Fund
LP et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Bybrook Capital Master Fund
LP et al., Plaintiffs,

v.

The Republic of Argentina, Defendant.

Nos. 14 Civ. 8601(TPG), 14 Civ.
8988(TPG), 14 Civ. 8630(TPG), 14 Civ.
8242(TPG), 14 Civ. 8946(TPG), 14 Civ.
8947(TPG), 14 Civ. 8303(TPG), 14 Civ.
4092(TPG), 14 Civ. 4091(TPG), 14 Civ.
8739(TPG), 14 Civ. 7258(TPG), 14 Civ.
7739(TPG), 15 Civ. 0710(TPG), 14 Civ.
8243(TPG), 13 Civ. 8887(TPG), 11 Civ.
4908(TPG), 14 Civ. 10141(TPG), 14 Civ.
5963(TPG), 14 Civ. 1109(TPG), 14 Civ.
3127(TPG), 14 Civ. 10016(TPG), 14 Civ.
7171(TPG), 14 Civ. 7169(TPG), 14 Civ.
7164(TPG), 14 Civ. 7166(TPG), 14 Civ.
7637(TPG), 14 Civ. 10064(TPG), 14 Civ.
9093(TPG), 14 Civ. 10201(TPG), 14 Civ.

9855(TPG), 14 Civ. 5849(TPG), 15 Civ. 1470(TPG), 15 Civ. 1471(TPG), 15 Civ. 1553(TPG), 15 Civ. 1588(TPG), 15 Civ. 1508(TPG), 15 Civ. 2611(TPG), 15 Civ. 5886(TPG), 15 Civ. 2577(TPG), 15 Civ. 5190(TPG), 15 Civ. 4654(TPG), 15 Civ. 3523(TPG), 15 Civ. 4284(TPG), 15 Civ. 4767(TPG), 11 Civ. 8817(TPG), 15 Civ. 6702(TPG), 15 Civ. 3932(TPG), 15 Civ. 7367(TPG), 15 Civ. 2369(TPG).

United States District Court, S.D. New York.

Signed Oct. 30, 2015.

Dennis H. Hranitzky, Robert A. Cohen, Dechert, LLP, New York, NY, Jennings F. Durand, Dechert LLP, Philadelphia, PA, for Plaintiff.

Carmine D. Boccuzzi, Jr., Cleary Gottlieb, New York, NY, for Defendant.

## OPINION AND ORDER

THOMAS P. GRIESA, District Judge.

Plaintiffs in these forty-nine actions hold defaulted bonds issued by defendant, the Republic of Argentina. Plaintiffs have already obtained partial summary judgment

that the Republic violated, and continues to violate, the *pari passu* clause of the underlying bond agreement. Plaintiffs now seek a remedy. They request an order granting specific performance of the *pari passu* clause. For the following reasons, the court grants plaintiffs' motions for specific performance.

### Background

In 1994, the Republic began issuing bonds pursuant to a Fiscal Agency Agreement ("FAA"). The FAA contains a provision, the *pari passu* clause, which 1 reads:

> The Securities will constitute ... direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness....

FAA ¶ 1(c). In 2001, the Republic experienced an economic crisis and defaulted on its public debts, including the FAA bonds. Each year since 2002, the Republic has passed legislation prohibiting payment on the FAA bonds. As a result, many FAA bondholders began filing actions against the Republic in this court.

### 1. The 2005 and 2010 Exchange Offers

In 2005 and 2010, the Republic issued exchange offers inviting creditors, including FAA bondholders, to exchange their old bonds for newly issued bonds worth 25% to 29% of the original bonds' value. The Republic took certain steps to encourage participation in the exchange offers, and to discourage "holdouts" from pursuing better terms. For example, the Republic enacted Law 26,017 (the "Lock Law"), prohibiting settlement with those who declined the 2005 exchange. *See* Law 26,017 art. 4. In all, an estimated 93% of the Republic's creditors accepted the 2005 and 2010 exchange offers. After each exchange, the Republic made regular payments on the Exchange Bonds but continuously refused to pay on the FAA bonds.

### 2. The Lead Plaintiffs and the *Pari Passu* Injunction

In 2010, a group of plaintiffs led by NML Capital, Ltd. (the "Lead Plaintiffs") filed motions seeking a different kind of judgment. These plaintiffs, by motion for partial summary judgment, asked the court to declare that the Republic had violated a portion of the *pari passu* clause, the "Equal Treatment Provision," by "creating a class of creditors who are guaranteed payment while formally condemning [plaintiffs] to a lower rank that is barred from receiving any payment at all." *See* Mem. L. Supp. Mot. Part. Summ. J. at 2, *NML Capital Ltd. v. Republic of Argentina*, No. 08–cv–6978 (Oct. 20, 2010). After extensive briefing, the court agreed with the Lead Plaintiffs and adjudged that the Republic had violated the *pari passu* clause of the FAA when it "lowered the rank of [plaintiffs'] bonds ... [and] when it made payments currently due under the Exchange Bonds[ ] while persisting in its refusal to satisfy its payment obligations currently due under [plaintiffs'] Bonds." Order at 4–5, *NML Capital Ltd. v. Republic of Argentina*, No. 08–cv–6978, 2011 WL 9522565 (Dec. 7, 2011).

On February 23, 2012, the court fashioned an injunction to enforce its judgment that the Republic had violated the *pari passu* clause. *See* Order, *NML Capital Ltd. v. Republic of Argentina*, No. 08–cv–6978 (Feb. 23, 2012). In granting equitable relief, the court found that each plaintiff "is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the *pari passu* clause], and that the equities and public

interest strongly support issuance of equitable relief to prevent the Republic from further violating [the *pari passu* clause]." *Id.*

The Court of Appeals for the Second Circuit affirmed the injunction, but remanded to this court "to clarify precisely how it intends this injunction to operate." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir.2012) (*NML I*). On remand, the court issued an order clarifying that:

> a. Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" to [plaintiffs].
>
> b. Such "Ratable Payment" that the Republic is ORDERED to make to [plaintiffs] shall be an amount equal to the "Payment Percentage" ... multiplied by the total amount currently due to [plaintiffs] in respect of the bonds at issue in these cases ..., including prejudgment interest....

Order at ¶ 2(a)-(b), *NML Capital Ltd. v. Republic of Argentina*, No. 08–cv–6978 (Nov. 21, 2012). This order became known as "the Amended Injunction."

The Republic appealed the Amended Injunction to the Court of Appeals.[1] The Second Circuit affirmed the Amended Injunction in its entirety. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir.2013) (*NML II*). Nonetheless, it stayed the injunction to allow the Republic to file a petition for a writ of

*certiorari. Id.* The Republic filed its petition, and the Supreme Court denied it on June 16, 2014. *Republic of Argentina v. NML Capital, Ltd.*, —— U.S. ——, 134 S.Ct. 2819, 189 L.Ed.2d 798 (2014). Soon thereafter, the Court of Appeals lifted the stay of the Amended Injunction and the Republic chose to default on the Exchange Bonds.

### 3. The Republic's Post–Injunction Conduct

Less than a month after the Court of Appeals affirmed the Amended Injunction, the Republic passed Law 26,886, reopening the exchanges but again prohibiting those who wished to participate from receiving terms more favorable than it had already offered. *See* Law 26,886 art. 2. Moreover, the Republic continued to forbid settlement with the holdouts who had filed lawsuits unless those holdouts accepted the same terms given in 2005 and 2010. *Id.* art. 4. In response, this court again ordered the Republic not to take any steps to evade its orders and held that the proposed evasion scheme would be illegal. Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08–CV–6978 (Oct. 3, 2013).

The day after the Supreme Court denied the Republic's petition for a writ of *certiorari*, the Republic announced a plan to pay on the Exchange Bonds without making a payment to the FAA bondholders. *See* Statement of the Minister of the Economy at 4 (June 17, 2014) ("We are initiating steps to initiate a debt exchange that would permit us to pay in Argentina under Argentine law."). Six days later, the Republic attempted to make a payment of $832 million on the Exchange Bonds without making a ratable payment to the Lead

---

1. Despite taking an appeal, at oral argument before the Court of Appeals in February 2013, counsel for the Republic "told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld ...." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir.2013).

Plaintiffs. It has attempted to make additional payments since then. *See* Op. & Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14–cv–8601 (June 5, 2015).

On September 11, 2014, the Republic enacted legislation with the stated purpose of paying on the Exchange Bonds without observing this court's orders in the Lead Cases. *See* Law 26,984 art. 2. The legislation purported to appoint an Argentine entity as trustee of the Exchange Bonds and establish a process for Exchange Bondholders to swap their Exchange Bonds for securities governed by French Law. *Id.* arts. 3, 7. Law 26,984 also declared this court's orders as "illegitimate and illegal obstruction" of the payment process on the Exchange Bonds. *Id.* art. 2.

In response, the court held the Republic in contempt of court at a hearing on September 29, 2014. *See* Am. & Suppl. Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08–cv–6978 (Oct. 3, 2014). The very next day the Republic purported to make yet another payment on the Exchange Bonds and has apparently attempted to do so again in March and June 2015. Cohen Decl. Exs. 22, 23, 30.

#### 4. The "Me Too" Plaintiffs and the Motions for Partial Summary Judgment

As discussed, in 2011 the Lead Plaintiffs obtained judgments from this court that the Republic violated the *pari passu* clause of the FAA when it lowered the rank of their FAA bonds. In early 2015, so-called "me too" plaintiffs in thirty-six actions filed motions for partial summary judgment seeking a similar ruling. On June 5, 2015, the court granted those motions, finding that:

---

**2.** The two actions where plaintiffs have obtained summary judgment but have not moved for specific performance are *Yellow*

By issuing the Exchange Bonds and passing legislation prohibiting payment on the FAA bonds, the Republic has created a superior class of debt to that held by plaintiffs. By making payments on this superior class of debt, the Republic has violated its promise to rank plaintiffs' bonds equally with its later-issued external indebtedness. Thus, the court holds, in light of the Republic's entire and continuing course of conduct, that it has breached the *pari passu* clause of the FAA.

Op. & Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14–cv–8601 (June 5, 2015). Plaintiffs in fifteen additional actions then filed similar motions for partial summary judgment, which the court granted on October 22, 2015. Op. & Order, *Trinity Invest. Ltd. v. Republic of Argentina*, No. 15–cv–2611, 2015 WL 6447731 (Oct. 22, 2015).

#### 5. The "Me Too" Plaintiffs and the Motions for Specific Performance

In total, "me too" plaintiffs in fifty-one actions have obtained judgments that the Republic violated, and continues to violate, the *pari passu* clause of the FAA. Plaintiffs in forty-nine of those actions now move for specific performance.[2] Plaintiffs seek equitable relief akin to the Amended Injunction obtained by the Lead Plaintiffs—and upheld by the Court of Appeals in August 2013—namely, an order requiring the Republic to make ratable payments to plaintiffs any time it makes, or attempts to make, payments on the Exchange Bonds. *See* Fed.R.Civ.P. 65(d).

#### Discussion

██ "Specific performance may be ordered where no adequate monetary remedy is available and that relief is favored by

---

*Crane Holdings, LLC v. Republic of Argentina*, No. 14–cv–5675, and *Yellow Crane Holdings, LLC v. Republic of Argentina*, No. 15–cv–3336.

the balance of equities, which may include the public interest." *NML I,* 699 F.3d at 261 (citations omitted).

### 1. The Republic's conduct causes plaintiffs irreparable harm for which there is no adequate remedy at law.

■ The Republic's ongoing violations of the *pari passu* clause cause plaintiffs irreparable harm for which there is no adequate remedy at law. The Republic has violated its promise to rank plaintiffs' bonds equally with its later-issued external indebtedness by making payments on the Exchange Bonds and not on plaintiffs' bonds. The Republic has made clear its intention to defy any money judgment issued by this court, and plaintiff has no other means to enforce its rights under the *pari passu* clause. *See id.* at 262 ("[I]t is clear to us that monetary damages are an ineffective remedy for the harm plaintiffs have suffered as a result of Argentina's breach.").

### 2. The balance of equities favors specific performance.

The balance of equities tips in plaintiffs' favor because the Republic has engaged in a scheme of making payments on other external indebtedness after repudiating its payment obligations to plaintiffs. As far back as 2012, the court held that the Republic's evasive tactics meant the balance of equities "strongly supports" an award of specific performance. The Republic has done nothing in recent years to alleviate the court's concerns. If anything, it has escalated its scheme of attempting to make payments on the Exchange Bonds while refusing to make any payment on the FAA

bonds. *See, e.g.,* Order, *NML Capital, Ltd. v. Republic of Argentina,* No. 08–cv–6978 (Oct. 3, 2013) (finding that the Republic's proposed evasion scheme would contravene the Amended Injunction).

The relief sought would also not unfairly prejudice the rights of third parties. The order does not affect the Exchange Bondholders' contractual right to be paid by the Republic, and the Republic's threat not to pay the Exchange Bondholders "does not make an otherwise lawful injunction 'inequitable.'" *See NML II,* 727 F.3d at 242. Moreover, the injunction is not unfair to the Exchange Bondholders because, as the Court of Appeals stressed, "before accepting the exchange offers, they were expressly warned by Argentina in the accompanying prospectus that there could be 'no assurance' that litigation over the FAA Bonds would not 'interfere with payments' under the Exchange Bonds." *Id.*

The Republic's arguments concerning its ability to pay all its debts in full are unavailing. Nothing in this order requires—or coerces—the Republic to pay plaintiffs anything at all.[3] The Republic laments that it will have no choice but to default if it is subject to an injunction requiring it to pay all plaintiffs if it wants to pay the Exchange Bondholders. But this argument ignores the obvious fact that the Republic has *already* chosen to default on its Exchange Bonds. Granting plaintiffs' motion here will therefore cause no new harm that would alter the equities.

The Republic also claims the court should not issue additional injunctions because they would impede settlement. The Republic's reluctance to entertain mean-

---

**3.** That said, the Republic has repeatedly shown it can pay its debts when it chooses to do so—such as its October 2015 payment of nearly $6 billion to creditors; its February 2014 settlement with Repsol S.A. for $5 billion; and its May 2014 settlement with the Paris Club nations for $9.7 billion. *See* Cohen Decl. Exs. 2–4. *Cf. NML II,* 727 F.3d at 242 (noting the importance of the Republic's failure "to present the district court with any record evidence to support its assertions" that it could not service its defaulted debt).

ingful settlement discussions before the Special Master should not prevent plaintiffs from vindicating their rights under the *pari passu* clause. If anything, the equities cut the other way. It would be inequitable to give injunctive relief to one group of bondholders while denying that relief to other, similarly situated bondholders. Ordering specific performance therefore ensures basic fairness by placing these plaintiffs on equal footing with the Lead Plaintiffs.

### 3. The public interest supports granting specific performance.

Finally, an order of specific performance serves the public interest of enforcing contracts, maintaining confidence in debt markets, and upholding the rule of law. As the Court of Appeals held back in 2013, "the interest—one widely shared in the financial community—in maintaining New York's status as one of the foremost commercial centers is advanced by requiring debtors, including foreign debtors, to pay their debts." *Id.* at 248. The same holds true today.

Nor will relief in this "exceptional" case "imperil future sovereign debt restructurings." *See id.* at 247. As the Court of Appeals observed, "cases like this one are unlikely to occur in the future because Argentina has been a uniquely recalcitrant debtor and because newer bonds almost universally include collective action clauses ("CACs") which permit a super-majority of bondholders to impose a restructuring on potential holdouts." *Id.* An order of specific performance therefore serves the public interest.

### 4. The FSIA poses no bar to the relief sought by the post-judgment plaintiffs.

The Republic asserts that § 1609 of the Foreign Sovereign Immunities Act ("FSIA") prohibits the injunctions sought by the *post-judgment* plaintiffs here. Although the Court of Appeals held that the FSIA posed no bar to the Amended Injunction, the Republic argues that it did so only because plaintiffs in the earlier cases had not yet obtained judgments, unlike many of the plaintiffs here. The injunction sought by the post-judgment plaintiffs would therefore be in "aid of execution" of their judgments and subject to the execution immunity afforded to sovereign property under the FSIA.

The Republic's attempt to evade the Court of Appeals' decision is unpersuasive. The Court of Appeals placed no weight on the pre-judgment status of those plaintiffs, instead holding generally that the FSIA has no relation to an order requiring the Republic to honor its contractual promise to pay all of its creditors ratably if it chooses to pay any of them. *NML I*, 699 F.3d at 262 ("[B]ecause compliance with the Injunctions would not deprive Argentina of control over any of its property, they do not operate as attachments of foreign property prohibited by the FSIA."). Just as with the Amended Injunction, the injunctions sought here "do not attach, arrest, or execute upon any property," nor do they require "seizure and control over specific property." *Id.* Indeed, as the Court of Appeals made clear, these injunctions "can be complied with without the court's ever exercising dominion over sovereign property." *See id.* And, if it so chooses, the Republic may pay its debts "with whatever resources it likes." *See NML II*, 727 F.3d at 240–41.

At oral argument, counsel for the Republic repeatedly claimed that, because the Amended Injunction is already in effect, the post-judgment plaintiffs' request for additional injunctions is redundant and necessarily shows that plaintiffs seek only to enforce their money judgments since the injunctions could serve no other purpose. *See, e.g.,* Hr'g Tr. at 27:11–14 (Oct.

28, 2015) ("[S]ince we have injunctions in place, the question becomes why are they insisting on this additional amount. And my submission to your Honor is that it is this issue of coercing a payment in full to them and to others. . . ."). Not so. Plaintiffs here are equally entitled to enforce their rights under the *pari passu* clause and understandably seek the same relief as the Lead Plaintiffs. Absent an injunction, plaintiffs in these actions would be left without the protection guaranteed to them under the FAA if the Lead Plaintiffs were to withdraw their claims against the Republic. The relief plaintiffs' seek is reasonable and has nothing to do with coercing payment or enforcement money judgments.

### 5. Compliance with the injunction is not impossible.

The Republic also argues that the court must deny all plaintiffs' motions because specific performance is unavailable where compliance is impossible. The Republic claims that "no sovereign . . . could afford to reduce its Central Bank reserves by the amount of the Republic's outstanding defaulted debt" because those reserves "are vital to maintaining the healthy functioning of the Republic's economy, and the requested orders would subject the Republic to an unacceptable degree of catastrophic risk." Mem. L. Opp'n Mot. Specific Performance at 2–3, *NML Capital, Ltd. v. Republic of Argentina*, No. 14–cv–8601 (Sept. 25, 2015).

Again, the Republic fundamentally misapprehends the nature of the *pari passu* clause and these injunctions. The injunctions are not meant to coerce payment— they seek to fulfill a promise to treat the Republic's obligations under the FAA equally with its obligations on other external indebtedness, both in ranking and through ratable payments. The *pari passu* clause does not ensure that plaintiffs' bonds will be paid in full—or even paid at all. Rather, it ensures that *if* the Republic chooses to pay some external indebtedness, it must pay the same ratable share to plaintiffs. The Republic can comply with the injunction even if it never pays plaintiffs, so long as it affords the same treatment to other holders of its external indebtedness.

### Conclusion

For these reasons, the court grants plaintiffs' motions for specific performance. The Republic is ordered to specifically perform its obligations to plaintiffs under the *pari passu* clause by making ratable payments to plaintiffs any time it makes, or attempts to make, payments on the Exchange Bonds. The Republic is enjoined from violating the *pari passu* clause and from taking any action to evade the purposes and directives of this order. Within three days, the Republic shall provide copies of this order to all participants in the payment process of the Exchange Bonds. These participants shall be bound by this order, as provided by Rule 65(d)(2), and prohibited from aiding and abetting any violation of this order.

SO ORDERED.